Ruffin, Judge.
 

 I do not know that the question made in this case has ever arisen before in this State. Nor have I been able to find a decision of it in any of our sister States. It must be decided therefore on general principles.
 

 It is a fundamental rule of evidence, at common law, that a party to a suit, or one directly interested in the result, is not competent to testify on the side of his interest, nor can lie be compelled to testify against it. This rule less frequently applies to public prosecutions than to civil actionsbecause it cannot often happen that pri
 
 *544
 
 vate rights are directly involved, or can be consequentially affected by verdicts or indictments. But when they are, the rule prevails in one case as well as the other — subject to a few certain exceptions of necessity or statute provision: as in the cases of violence on the wife, or of a witness who is entitled to a reward, on a conviction of the offender upon his testimony. But in other instances, there is no distinction between the effect of a direct interest in criminal or civil cases. A wife cannot testify for one who is co-defendant with her husband upon an indictment for a riot or conspiracy. A prosecutor, or his wife, cannot give evidence in an indictment for forcible entry, under the statutes of
 
 Henry
 
 and
 
 James.
 
 One charged as accessory, cannot be a witness for the principal; and other like cases. This has never been carried so far as to embrace heirs apparent, or in tail, or remainder-men, or masters of apprentices. In the former cases, the interest is too uncertain and remote
 
 i
 
 in the latter, there is no legal interest, because there is no
 
 property.
 
 But in the case of master and slave, the interest is direct and immediate. The whole property in the slave is in jeopardy, and the master is liaole for the costs in case of a conviction. He is not, it is true, party to the record, in the sense of reversing the judgment for any irregularity in giving him notice j which is a collateral matter within the discretion of the Court, as to the time- and mode of proceeding. But his interests are essentially at stake, as much as the life of the slave is. The rule of exclusion or protection, on the score of interest, must apply in all cases alike, because it is drawn from the know n general frailty of our species. The evidence of an interested witness is rejected, because we cannot have confidence, that men in general in that state will tell the truth, and the whole truth. The temptation is too strong for men to be exposed to itj and the danger of a jury being misled is too
 
 *545
 
 great. This applies equally (o all cases. I think, therefore, that a master cannot b.e a witness for his slave. It follows, that he ought not to be forced on the other side.
 

 
 *544
 
 Dec. 1830.
 

 
 *545
 
 But this suggests another difficulty. The p-.nilege not to testify, upon the ground of interest, is that of the master and not of the slave, it may be consequently waived by the former. He may himself prosecute, and give evidence against his slave. And since that is certain, I have entertained the most serious scruples against interfering v\ itli this conviction. It cannot be presumed, that the master would falsely and corruptly destroy his own property. Ills evidence on the side of his interest may be suspected; but that against it cannot be supposed to be stronger than the- truth would jus+ify. If so, the prisoner can have no cause to complain. And could I separate her rights from (hose of the witness, l would do so, and let the verdict stand. But they are so connected, that justice
 
 cannot
 
 be. done to the master, without giving the slave the benefit of it. We cannot restore him his property, without yielding ties* another trial for her life
 
 ;
 
 nor reverse th'1 judgment for the costs, without reversing it altogether. I therefore conclude, with much hesitation, that as the master did object to be sworn, there must he a new trial.
 

 When I speak of the power of the master to waive his privilege and give testimony, l would not be understood as putting the slave’s life in the- master’s hands, and resting it on his mercy. I allude to testimony to facts within his knowledge. When he is called to confessions, a different slate of the case, may arise, m which the privilege will be that of the prisoner. The confessions may have been made in reference to defence, and as instructions for conducting it; or being to the master, may or may not be of that voluntary character, which the law, not less in wisdom than humanity, requires. Upon those points, not the slightest intimation of opinion is now intended ; for there is not a little difficulty in them, and
 
 *546
 
 this case does not require a decision upon them. The exception of the prisoner does not present an objection to ti»e evidence, upon either of these grounds
 
 ;
 
 and therefore this Court must take it, that none existed in point of
 
 fact;
 
 that the confessions were made freely, and not with a view to defence.
 

 Hall, Judge.
 

 The question submitted to the Court is one of a complex nature. The rights of the State, of the master, and of the slave, are involved in it. If the offence charged in the indictment has been committed, the State is entitled to redress, by the legal conviction and punishment of the slave. In sueh case, the master must submit to the loss of the slave, and the slave must submit to her fate. But it is necessary to enquire, whether ¡he rights of either have been violated.
 

 First, with respect to the rights of the master. It is a rule of evidence, that a party to a suit cannot be admitted or compelled to give evidence in it, because he is directly interested in the issue of it. The trial throws directly upon him a loss or a benefit. He is therefore, on the score of interest, altogether excluded from giving evidence. It may be taken in the present case, that the master is not a
 
 party in form
 
 to the proceeding. But he is substantially so. He has as great an interest in the issue, as if it was made up iu an action of
 
 detinue,
 
 to which he was a party. The conviction of the slave is a judgment against him to the amount of her value. In addition to this, he is made liable by the act of 1793,
 
 (Ben. c.
 
 381) for the costs of the prosecution, provided the slave, if a free person, would be liable lor them. And there is no doubt, that she would be liable upon conviction. I therefore think, that the master was so much interested in the case, that he ought not to have been examined as a witness, when objected to by himself. The objection, however, is personal to the master. It cannot be taken by the slave. As to her, the evidence was legal. But to rectify the error as to the master, a
 
 *547
 
 new tria! must be awarded. As to the rights of the slave, were 1 he master to forego his interest, and voluntarily gheeudence against her, I am inclined to think, that she might legally object to his giving in evidence any of her confessions made to him,*because by the. act of 1793
 
 fRev. c.
 
 381) he is authorised to defend her; and because she is his slave, and by various means, against which slavery could make but little resistance, he.might exact from her any confessions he pleased. But upon this part of the case, I give no opinion.